```
               UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

John A. Ledoux, Jr.

    v.                                          Civil No. 13-cv-530-JD
                                                      Opinion No. 2016 DNH 112

Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration


O R D E R

John A. Ledoux, Jr. seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying his applications for social security disability benefits. Ledoux contends that the Administrative Law Judge ("ALJ") erred in weighing the medical opinions in the record, in failing to consider the limiting effects of other impairments, in assessing a residual functional capacity for full-time work, and in relying on the vocational expert's opinion based on an incomplete hypothetical question. The Acting Commissioner moves to affirm the decision.

Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found

facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## Background[1]

Ledoux applied for social security disability benefits and supplemental security income in April of 2007, alleging a disability since January 15, 2006. His application was denied and, after a video hearing, an ALJ issued a decision on April 6, 2010, finding that Ledoux was not disabled. On judicial review, the court reversed and remanded the decision on January 24, 2011. The same ALJ held another video hearing and then issued a decision on March 1, 2012, again finding that Ledoux was not disabled. When the administrative files were not available to allow review, the court again reversed and remanded.

---

[1] The background information is summarized from the parties' joint statement of material facts. See LR 9.1(c).

A new ALJ held a third video hearing on April 2, 2015, and issued a decision on April 24, 2015, finding that Ledoux was not disabled from the alleged onset date through his last insured date of March 31, 2011. The ALJ found, however, that Ledoux was disabled after October 24, 2012, because his age category changed.[2] When the Appeals Council informed Ledoux that the ALJ's decision was the final decision, he again sought judicial review.

Ledoux was forty-three years old in 2006, when he alleges his disability began. He had worked as a tow truck driver, a heavy equipment driver, and motorcycle repairer. For purposes of challenging the current decision, Ledoux is seeking social security disability benefits and alleges disability caused by physical impairments due to disc disease, headaches, and coronary artery disease.

A.  Medical Records

In September of 2006, Ledoux reported during an initial healthcare assessment that he had lower back pain that caused him to double over at times and interrupted his sleep. An x-ray showed a collapsed disc at L4-L5 with advanced degenerative bone changes and an "anterior and posterior marginal spur causing

---

[2] The Social Security Administration found that Ledoux was entitled to supplemental security benefits as of February 1, 2013.

some focal stenosis of the spinal canal." Ledoux's gait was coordinated and smooth. The physician's assistant prescribed pain medication.

At appointments over the rest of 2006, Ledoux reported that medication helped him sleep but that he still had back pain and also had numbness in his leg and foot. In December of 2006, an MRI showed disc herniation at L5-S1 and L4-L5 along with "collapse and loss of disc height as well as disc dessication" at L3 to S1. Despite worsening back pain, Ledoux continued to be self-employed doing carpentry into 2007.

In April of 2007, Ledoux reported increased pain and right leg weakness. He was limping, and his range of motion was limited by low back pain. Straight leg testing was positive on his right leg. He also reported that he had not worked since the winter.

By mid-2007, physicians agreed that nonoperative treatment of Ledoux's back pain had been unsuccessful. On July 9, 2007, Dr. Yogish Kamath operated on Ledoux, doing a lumbar laminectomy with L3-L5 disc fusion. He was discharged from the hospital on July 14, 2007.

In late July of 2007, Dr. Matt Masewic, a state agency physician, reviewed Ledoux's records and concluded that despite Ledoux's severe lumbar disc disease, he could work at the sedentary exertional level and do all postural activities.

4

Another state agency physician reviewed Dr. Masewic's opinion and agreed.

Ledoux reported to a physician's assistant in mid-August that he was symptom free. His physical examination produced normal results. Dr. Kamath cautioned that Ledoux was to avoid bending, contact sports, and lifting weights over twenty-five to thirty pounds. Dr. Kamath also stated that Ledoux could not return to his work in the construction industry.

Physical therapist Ernest Roy performed a functional capacity assessment of Ledoux on August 21, 2007. Because of Ledoux's recent surgery, Roy could not do some of the necessary testing. He found that Ledoux could occasionally do postural activities, walk, stand, and drive and was not limited in hand movements and manipulation. Roy also found that Ledoux could work at the light exertional level for eight hours daily.

A state agency consultant, Dr. Akbar N. Sadri, reviewed Ledoux's records and issued an opinion on March 21, 2008. He found that Ledoux could do work at the sedentary exertional level with certain other limitations.

In October of 2008, Ledoux was hospitalized for chest pain radiating down his arms. He was diagnosed with a heart attack. He had a surgical procedure to insert a stent in his left circumflex coronary artery. His post-operative checks reported that he was doing well.

After he fell in January of 2009, Ledoux reported to a physician's assistant that he had an exacerbation of back pain. He also noted chronic neuropathy of his right leg and foot since the surgery.  An x-ray showed no acute fracture or displacement of the surgical hardware.  The physician's assistant prescribed pain medication.

During a physical therapy consultation in March of 2009, Ledoux reported that although surgery had improved his pain, he still had chronic back pain.  The physical therapist issued a TENS unit and recommended home exercise.  In May, Ledoux reported chronic back pain with a recent increase in pain.  The physical therapist noted that Ledoux was stiff when getting up from a chair and that he walked with a limp.  She ordered a home lumbar traction unit.

At a doctor's appointment in July of 2009, Ledoux reported back pain radiating into his left hip.  Dr. Alina Robert found decreased sensation in his lower legs and positive results on straight leg testing.  An MRI of Ledoux's lumbar spine showed degenerative disc disease, a renal cyst on the left side, bilateral tightening of spinal cord nerves at L2-L3, a post-operative meningocele or pseudomeningocele (accumulation of cerebrospinal fluid in the back causing pain and headaches), a broad-based disc bulge at L2-L3 with other changes, and loss of intervertebral disc space at L4-L5.

Dr. Gopalan Umashankar evaluated Ledoux in September of 2009 for back pain. Although the examination was essentially normal, Dr. Umshankar assessed failed low back syndrome. He stated that Ledoux should not lift weights heavier than twenty pounds, should not bend forward or sideways, and would have difficulty returning to his former work.

In October of 2009, Ledoux saw Dr. Rowland Hazard because of back pain. Dr. Hazard recommended a neurological review. Dr. Nathan Simmons did a neurosurgical evaluation in November and found that the pseudomeningocele was not causing headaches or pain, and that there were no surgical issues.

In January of 2010, Dr. Hazard referred Ledoux to Occupational Therapist Lynn Chauvette for a functional capacity evaluation. Chauvette found that Ledoux could safely do sedentary work but that he could not sustain the work, even on a part-time basis, because of his need to change positions frequently. During her examination, Chauvette noted signs of Ledoux's competitive effort and performance and his physical discomfort. Chauvette also noted that Ledoux had two of seven anatomically unreasonable responses, or Waddell signs, during the testing. Overall, Chauvette found that Ledoux provided full physical effort and that his reports of pain were reasonable and reliable based on the test findings and clinical observations.

A physician's assistant, who had treated Ledoux over the past few years, wrote a letter in July of 2010 stating that a recent study showed multilevel degenerative changes in Ledoux's cervical spine.  Dr. Hazard also noted degenerative changes in Ledoux's cervical spine.  An MRI showed mild to moderate narrowing in the cervical spine.  In September, Dr. Hazard reviewed Chauvette's functional capacity report and found it credible, noting that the evaluation system she used was well known and authoritative.  A state agency consultant, Dr. Louis Rosenthall, reviewed Ledoux's records in November of 2010 and found that he could do work at the sedentary level and had no other limitations.

In March of 2011, Ledoux reported to the physician's assistant that he had worsening neck pain and sleep problems.  She increased his pain medication dosage.  Ledoux's date last insured for purposes of disability insurance benefits was March 31, 2011.

Thereafter, Ledoux continued to be treated for back and neck pain, including injections and pain medication.  In August of 2012, an MRI showed advanced degenerative changes at the L2-L3 level and other changes noted in the cervical spine.

B.  Administrative Hearing and Decision

A video hearing before an Administrative Law Judge was held on April 2, 2015.  Ledoux testified that his three children stayed with him every other week.  He said that he was limited in his activities by back pain that ranged in severity from a four to a ten and that he also suffered from headaches.  He was taking pain medication for his back.  Despite the pain, he was able to mow his small lawn, shop with his mother and his daughter, and occasionally bike with his children.

A vocational expert testified at the hearing.  In response to a question about an individual limited to light work with occasional postural limitations and some other prohibited activities, the vocational expert testified that the person could not return to Ledoux's former work but could do other work.  When the exertional level was reduced to the sedentary level, the vocational expert testified that the person could work as an answering service operator, a telephone marketer solicitor, and a surveillance system monitor.  If the person could not sit, stand, or walk for more than four hours in a day, no jobs would be available.  In response to questions from Ledoux's counsel, the vocational expert testified that a person who had to get up and lean against a wall or support himself with his hands for five minutes every hour could still do the

identified jobs but a need for those activities for ten minutes or to lie down for an hour would preclude the identified jobs.

The ALJ found that Ledoux had the residual functional capacity to do sedentary work that would allow him to change positions between sitting and standing at will and with a limitation to doing postural activities only occasionally. Based on that assessment, the ALJ found, using the e Medical-Vocational Guidelines and the vocational expert's testimony, that Ledoux was not disabled before October 24, 2012.  Because of his age, the ALJ found that Ledoux was disabled after October 24, 2012.  When Ledoux did not send written exceptions to the ALJ's decision to the Appeals Council within the time allowed, the ALJ's decision became the final decision in the case.

## Discussion

Ledoux moves to reverse the decision and remand the case for further proceedings on the grounds that the ALJ erred in giving Chauvette's functional capacity evaluation little weight, erred in weighing the medical opinion evidence, erred in failing to consider Ledoux's limitations in combination, and erred in making the disability finding based on an incomplete hypothetical to the vocational expert.  The Acting Commissioner moves to affirm the decision.

In determining whether a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520. The claimant bears the burden through the first four steps of proving that her impairments preclude her from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Acting Commissioner has the burden of showing that jobs exist which the claimant can do. Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

A. Opinion Evidence

An ALJ is required to consider the medical opinions along with all other relevant evidence in a claimant's record. 20 C.F.R. § 404.1527(b). Medical opinions from all sources are evaluated based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that may be brought to the ALJ's attention. § 404.1527(c); Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not 'Acceptable Medical Sources' in Disability Claims, SSR 06-03p, August 9, 2006, 2006 WL 2329939, *4-*5.

The ALJ may rely on opinions of state agency consultant physicians under the same analysis as that applied to opinions

11

of treating or examining medical sources.  § 404.1527(e); Ormon v. Astrue, 497 F. App'x 81, 84 (1st Cir. 2012); Smallidge v. Colvin, 2014 WL 799537, at *5 (D.N.H. Feb. 28, 2014); see also Titles II and XVI:  Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians, SSR 96-6p, 1996 WL 374180 (July 2, 1996).  The opinions of state agency consultant physicians, however, may constitute substantial evidence to support an ALJ's findings only if the opinions are supported by the record.  SSR 96-69, at *2.  If the state agency consultant reviewed only part of the record, the opinion cannot provide substantial evidence to support the ALJ's residual functional capacity assessment if later evidence supports the claimant's limitations.  See McGowen v. Colvin, 2016 WL 1029480, at *6 (D.N.H. Mar. 15, 2016) (citing cases).

Acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech language pathologists who may provide evidence to establish an impairment.  20 C.F.R. § 404.1513(a).  Other sources, such as physical and occupational therapists, may provide evidence of the severity of an impairment and how it affects the claimant's work. § 404.1513(d).  Functional capacity testing by a physical therapist or an occupational therapist is "evidence from other

12

sources" that may be considered to determine the severity of an impairment and its functional effect.  § 404.1513(d).

### 1. Functional Capacity Evaluations

Ledoux argues that the ALJ erred in giving little weight to the functional capacity evaluation done by Occupational Therapist Lynn Chauvette.  He contends that because Dr. Hazard referred Ledoux to Chauvette for the evaluation and then reviewed the evaluation and found that it seemed credible the evaluation should have been given greater weight.  He also faults the ALJ for giving Physical Therapist Ernest Roy's evaluation great weight while discounting Chauvette's opinion as not being from an acceptable source.

As Ledoux points out, the ALJ's analysis of Roy's opinion and Chauvette's opinion is inconsistent.  Both are therapists, and therefore, neither are acceptable medical sources.[3]  As such, both opinions may be considered for purposes of determining the severity of a claimant's diagnosed impairments and their effect on his ability to work.  To the extent the ALJ discounted Chauvette's opinion, which provided a functional capacity

---

[3] The Acting Secretary mistakenly identified Roy as "Dr." in her memorandum in support of her motion to affirm, which may explain, in part, the confusion about Roy's status.

13

assessment, because it was not from an acceptable medical source, that was error.[4]

In addition, Ledoux correctly contends that the ALJ erred in discounting Chauvette's opinion as unreliable based on her finding that Ledoux's testing showed two out of seven Waddell signs. "Waddell signs are behavioral responses to physical examination that indicate the presence of nonorganic—e.g. psychological, social or behavioral—involvement in lower back pain, and such signs are not on their own a test of credibility or faking." Ormon v. Astrue, 497 F. App'x 81, 86 (1st Cir. 2012) (internal quotation marks omitted). Because Waddell signs occur in patients with organic back pain, "isolated signs should not be considered clinically significant." Id.; see also Doucette v. Astrue, 972 F. Supp. 2d 154, 157 n.18 (D. Mass. 2013) ("Normally, at least three Waddell signs must be present to consider the signs relevant to credibility." Citing Bazile v. Apfel, 113 F. Supp. 2d 181, 187 n.2 (D. Mass. 2000)).

Despite the two positive Waddell signs, Chauvette documented during the three and half hours of testing that Ledoux showed objective signs of pain. She also found that Ledoux demonstrated full physical effort and that his reports of

---

[4] On the other hand, Ledoux's reliance on Dr. Hazard's referral to Chauvette to bolster her opinion is misplaced. See Scott v. Colvin, 2014 WL 3895238, at *2 (D.N.H. Aug. 8, 2014).

14

pain and disability were reliable and reasonable based on her test findings.  Therefore, the ALJ erred in discounting Chauvette's opinion based on a perceived lack of reliability.

The inconsistencies in Ledoux's reported work record cited by the Acting Commissioner to show a lack of credibility in Ledoux's claims do not undermine Chauvette's evaluation.  There is no suggestion that Chauvette was influenced by the date when Ledoux stopped working, which in any case was years before Chauvette tested Ledoux.  Also, Chauvette based her evaluation on her own testing and observations, not on Ledoux's subjective complaints, so that Ledoux's credibility does not significantly affect the value of Chauvette's evaluation.

Roy evaluated Ledoux in August of 2007, only a month after Ledoux's surgery.  Due to the recent surgery, Roy was not able to conduct all of the tests for the evaluation.  Given the limitations on Roy's testing and the changes in Ledoux's condition over the next few years, after Roy provided his residual functional capacity assessment, the ALJ's decision to give Roy's opinion great weight was not well supported.

Therefore, the ALJ erred in giving Roy's opinion more weight than Chauvette's opinion.  The ALJ also gave weight to medical opinions in the record that supported a residual functional capacity assessment for the ability to do sedentary work.  Those are reviewed below.

2. <u>Medical Opinions</u>

Ledoux challenges the ALJ's assessment of the medical opinions provided by Dr. Sadri, Dr. Masewic, and Dr. Umashankar. She also asserts that the ALJ erred by ignoring Dr. Hazard's opinion. As the Acting Commissioner explains, Dr. Hazard's referral to Chauvette and his comment that Chauvette's evaluation seemed credible are not medical opinions. See Scott v. Colvin, 2014 WL 3895238, at *2 (D.N.H. Aug. 8, 2014). Therefore, Ledoux does not point to a medical opinion by Dr. Hazard that should have been considered by the ALJ.

Dr. Masewic's opinion is from July of 2007, just days after Ledoux had back surgery. It is based on Dr. Masewic's review of medical records from before the surgery, which did not account for changes that occurred thereafter. Ledoux's medical record documents substantial changes in his medical condition after that time. Because Dr. Masewic did not review the years of medical records after July of 2007 and did not have Chauvette's opinion, his evaluation does not provide substantial evidence to support the ALJ's residual functional capacity assessment.

Dr. Sadri reviewed the medical evidence in March of 2008 and provided his opinion that Ledoux could work on a full-time basis at the light exertional level. Dr. Sadri found no medical cause for Ledoux's recent complaints of hand numbness, which Dr.

Hazard later found to be caused by disc pathology in Ledoux's cervical spine.  Again, the medical record continues on for two years after Dr. Sadri provided his evaluation.

Dr. Umashankar did not provide a separate opinion about Ledoux's residual functional capacity.  Instead, as part of his treatment records, Dr. Umashankar stated some weight limitations and bending restrictions on Ledoux's functional capacity but provided no opinion about Ledoux's ability to work on a full-time basis.  The ALJ properly gave great weight to the lifting and bending limitations found by Dr. Umashankar.

B.  Finding of Not Disabled

The ALJ found that Ledoux was able to work full time at the sedentary exertional level with the ability to change positions at will and some postural and climbing limitations.  Occupational Therapist Chauvette found in January of 2010 that the level of pain Ledoux was experiencing during her testing precluded him from full-time work.  No opinion considered by the ALJ, which could provide substantial evidence, found that Ledoux was capable of full time work by that time.

The Acting Commissioner points to the opinion provided in November of 2010 by Dr. Rosenthall that Ledoux was capable of working at the sedentary level to show substantial evidence to support the ALJ's assessment.  The ALJ did not address Dr.

17

Rosenthall's opinion, however. The Acting Commissioner argues, relying on Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000), that omission is harmless because remand would be an empty exercise.

In general, the court cannot affirm the Acting Commissioner's decision based on a rationale or analysis that the ALJ did not consider. See High v. Astrue, 2011 WL 941572, at *6 (D.N.H. Mar. 17, 2011); accord Jenness v. Colvin, 2015 WL 9688392, at *7 (D.N.H. Aug. 27, 2015). The Acting Commissioner has not shown that the general rule should not apply here. Further, Ledoux disputes Dr. Rosenthall's opinion, pointing to mistakes and omissions in his evaluation of the record. Therefore, Dr. Rosenthall's opinion cannot provide substantial evidence to support the ALJ's finding that Ledoux was capable of full-time work at the sedentary exertional level.

In the absence of substantial evidence, the Acting Commissioner's decision must be reversed and remanded.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 12) is granted.

The Acting Commissioner's motion to affirm (document no. 14) is denied.

The decision of the Acting Commissioner is reversed and the case is remanded pursuant to Sentence Four.

SO ORDERED.

                                    Joseph DiClerico, Jr.
                                    United States District Judge

July 6, 2016

cc:   Ruth Dorothea Heintz, Esq.
      Robert J. Rabuck, Esq.